**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:26-CV-00510-KDB-MTO**

| | |
|---|---|
| **ANTHONY HUGHES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TRUIST BANK, ET AL.,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Hartford Life and Accident Insurance Company ("Hartford") and The Hartford Insurance Group, Inc.'s ("HIG") Motion to Dismiss, (Doc. No. 16), and Defendant Truist Bank ("Truist")'s Motion to Dismiss. (Doc. No. 38).[1] The Court has carefully considered these Motions, and the Parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the Motions.

## I. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*,

[1] This matter was transferred to this Court from the Northern District of Georgia by the Honorable Steven D. Grimberg on June 26, 2026. (Doc. No. 27.)

550 U.S. at 570; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

Truist Bank is a national bank with its headquarters in Charlotte, North Carolina. It offers its employees an employee welfare benefit plan, including the Truist Financial Corporation Employee Benefit Plan (the "Plan") in which Plaintiff enrolled. The parties do not dispute that the Plan is governed by ERISA.[2] According to the Plan's Summary Plan Description ("SPD"),[3] the Plan is administered by "both the Plan Sponsor and the Insurance Company." (Doc. No. 39-1 at 5.) Truist Financial Corporation is the Plan Sponsor and a Plan Administrator.[4] *Id.* The Plan also

[2] "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

[3] The Court will consider the SPD because it is integral to the Complaint and its authenticity is not challenged. *See infra*, Section III.B (discussing materials outside of the Complaint).

[4] Because the Court ultimately finds dismissal is appropriate, it need not review the corporate structure of Truist Bank and Truist Financial Corp. If dismissal were not appropriate,

named the Truist Employee Benefits Plan Committee (the "Committee") as a Plan Administrator. *Id.* The Plan is insured by Hartford, a member of HIG.[5] *Id.* at 86. The Insurance Company (i.e., Hartford) is a named fiduciary for administering claims (i.e., Claims Administrator). *Id.* at 6.

According to the Complaint, Hughes was employed by Truist and was a participant in the Plan. (Doc. No. 1 ¶ 8). Within the Plan, Hughes enrolled in Accidental Death and Dismemberment ("AD&D") coverage, which was provided by Hartford. *Id* ¶¶ 8-10. As permitted by the Plan, Hughes elected AD&D coverage in the amount of 10 times his annual salary, which totaled $830,000, known as the "Principal Sum" under the terms of the Plan. *Id.* ¶ 11.

The Complaint alleges that Hughes was "led to believe that this amount applied equally to the death of a spouse." *Id.* He asserts that the Plan's materials "accessible" to him did not state that spousal AD&D coverage would be limited to 50% of his elected amount. *Id.* ¶ 12. Instead, this "critical information was buried several layers deep in non-obvious hyperlinks." *Id.* ¶ 13. And he alleges that sometimes this information "was not present on the portal at all." *Id.* ¶ 13. The Complaint further claims that Truist's Benefits Administration Manager admitted that such information was "NOT easy to locate" and the manager "could see how" the language could be misleading. *Id.* ¶ 14 (emphasis in Complaint).

---

Hughes would be required to seek leave to amend to correct the caption. Here, Truist does not appear to be prejudiced and ultimately prevails on its motion.

[5] HIG is a parent company to Hartford. (*See generally* Doc. No. 16.) Hartford contends HIG is not a proper defendant because it is not a fiduciary with respect to the Plan. (*Id.* at 9; Doc. No. 42 at 3.) It is well established that a parent corporation cannot be held liable for the acts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). On the face of the Plan documents, HIG bears no relationship with the Plan and therefore all claims against HIG will also be dismissed on that additional ground.

On May 13, 2024, Hughes's wife died in an accident, and Hughes timely submitted an AD&D claim for $830,000. *Id.* ¶¶ 16-17. Citing the purportedly "hidden" terms of the Plan, Defendants paid Hughes $415,000. *Id.* ¶ 18. Hughes timely appealed the decision, which Defendants denied on March 25, 2025. *Id.* ¶¶ 19-20. According to the Complaint, Truist subsequently modified the portal to "make the limitation more visible." *Id.* ¶ 15.

Defendants Hartford and HIG moved to dismiss on October 23, 2025, and, after the case was transferred to this Court, Defendant Truist moved to dismiss on July 31, 2026. Both motions are fully briefed and ripe for the Court's ruling.

## III. DISCUSSION

### A. Shotgun Pleading

Hartford and Truist argue, as an initial matter, that the Complaint is an impermissible "shotgun pleading." (Doc. No. 16 at 5 n.3; Doc. No. 39 at 10-11.) "Shotgun pleading occurs when a complaint fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or if it is virtually impossible to know which allegations of fact are intended to support which claims[] for relief." *Bethea v. Equifax Info. Servs., LLC*, 813 F. Supp. 3d 581, 586 (W.D.N.C. 2025) (quoting *SunTrust Mortg., Inc. v. First Residential Mortg. Services Corp.*, No. 3:12-cv-162, 2012 WL 7062086, at *18 (E.D. Va. Sep. 11, 2012) (internal quotation omitted); *Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 589-90 (M.D.N.C. 2004) ("Courts have been quick to reject [complaints] in which multiple defendants are 'lumped together.'"). In other words, Plaintiff must plead with specificity the acts alleged as to each defendant because Rule 8 of the Federal Rule of Civil Procedure requires the complaint to provide *each* defendant with fair notice of the claims against it. *See Reaves v. Ocwen Loan Servicing LLC*,

No. 5:16-CV-186FL, 2016 WL 3248298, at *1-2 (E.D.N.C. June 10, 2016) (dismissing plaintiff's complaint as a shotgun pleading).

The Court agrees in part with Defendants. On the one hand, the Complaint is not a model of clarity. On the other hand, in analyzing a motion to dismiss under Rule 12(b)(6), some latitude is appropriate. Indeed, the Supreme Court has held that courts may sometimes use different parts of a complaint to shed light on other parts and, moreover, even use parts of a plaintiff's brief to clarify allegations in the complaint. *See Pegram v. Herdrich*, 530 U.S. 211, 230, 230 n.10 (2000) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure §§ 1357, 1364 (1990)).

**B. Materials "Outside" of the Pleadings**

Before assessing the validity of the Motions, the Court must address whether the various Plan and other documents attached to Defendants' motions can be considered at this stage without converting the motion into one for summary judgment. Hartford and Truist attached the following documents to their Motions: (1) Plan Documents (Doc. No. 16-2); (2) Summary Plan Description (Doc. No. 39-1); (3) Hughes's Administrative Appeal (Doc. No. 39-2);[6] and (4) Adverse Benefit Notice (Doc. No. 39-3). Hartford and Truist argue that these documents are central to the dispute because an ERISA claim "stands or falls by the terms of the plan." (Doc. No. 48 at 2) (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009)).

On a motion to dismiss, the Court may consider documents submitted by the movant that were not attached or incorporated into the complaint so long as the document was "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Bowser v. Gabrys*, 746 F. Supp. 3d 256,

[6] The Administrative Appeal includes an email and series of screenshots of a portal for plan participants to view information, which was taken and provided by Hughes during the appeal.

261 (W.D.N.C. 2024) (granting motion to dismiss upon review of extrinsic documents without converting motion). "A document is integral to a complaint where its very existence, and not the mere information it contains, gives rise to the legal rights asserted or where the legal rights at issue in the complaint rely heavily upon its terms and effect." *Moler v. Univ. of Maryland Med. Sys.*, No. 1:21-CV-01824-JRR, 2022 WL 2716861, at *2 (D. Md. July 13, 2022) (internal quotations omitted) (citing *Goines*, 822 F.3d at 166) (striking certain exhibits as non-integral but noting the ERISA plan document was not challenged).

Hughes argues that the Court should not consider documents attached to the Motions, and, if it does, the Court must convert the Motions to dismiss into motions for summary judgment. (Doc. No. 44 at 6.) He further contends that the Court should not accept these exhibits as "the complete and controlling universe" nor weight the materials over his allegations. *Id.* He disputes whether the documents available to him included the limitation and suggests the Court cannot resolve this question or accept Defendants' "factual characterizations over [his] well-pleaded allegations." *Id.* at 12 (citing *Goines*, 822 F.3d at 165-69). Lastly, Hughes counters Defendants' exhibits by referencing (but not attaching) an exhibit of his own consisting of "contemporaneous correspondence" from a Truist Benefits Administration Manager where he purportedly acknowledges that the SPD was "NOT the easiest to locate" and that the enrollment screen links led "only" to general Plan information rather than benefit details. *Id.* at 11.[7]

[7] Even if an account manager stated that the SPD contradicted the Plan, or he brazenly attempted to modify the Plan's terms, the email would not control over the Plan documents. *See Band v. Paul Revere Life Ins. Co.*, 14 F. App'x 210, 213 (4th Cir. 2001) (quoting *HealthSouth Rehabilitation Hospital v. American National Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996) (noting informal communication and plan amendments are "incapable of altering the specified terms of the plan's written coverage"). Further, the Court is unaware of an ERISA or fiduciary requirement that specifies an employer must have a portal at all, much less a portal with optimized hyperlinks and information, nor has Plaintiff cited to any such authority.

Hartford argues that Plaintiff cannot contest authenticity and completeness because he relies on the Plan document repeatedly and "offers no particularized challenge," merely asserting a "bald" contest of authenticity that is "not genuine." (Doc. No. 42 at 7.) Hartford further argues that courts in the Fourth Circuit regularly rely on plan documents in ERISA cases, even if plaintiffs do not attach the documents to their complaints. *See id.* (citing *Clark v. BASF Corp*., 142 F. App'x 659, 661 (4th Cir. 2005) and *Bowser*, 746 F. Supp. 3d at 262). Truist echoes this sentiment, adding facts and circumstances that distinguish the cases on which Hughes relies, specifically that Hughes's participation in the administrative proceedings makes them a "far cry" from the "self-serving statements" in the police reports in *Goines*. (Doc. No. 49 at 1-2).

The Court agrees in part with both sides. The Court will consider the Plan documents and SPD, which are clearly referenced in the Complaint or integral to Plaintiff's claims and plainly authentic. Still, the Court will not reach beyond the pleading unnecessarily nor make inferences based on extrinsic documents in favor of the Defendants. *Cf. E.I. de Point de Nemours and Co.*, 637 F3d at 450 (noting error in accepting statements and making inferences based on defendant's assertion that it provided *all* the relevant documents to assess market share). Although the Administrative Appeal and Adverse Benefits Notice are a close call, the Court need not decide whether these are sufficiently integral to the Complaint because the Complaint and Plan documents are sufficient to decide the motions. So, the Court will not review the Administrative Appeal and Adverse Benefits Notice in making its determination. Hughes did not reference or rely on the appeal and notice in the Complaint and the Court accepts his argument that other communications might in fairness need to be considered along with those documents.[8]

---

[8] Truist suggests that because Hughes references his administrative appeal in Paragraph 19 of his Complaint, the Court can consider this document. (Doc. No. 39 at 4, n.5). To be sure,

### C. ERISA – Claim for Benefits

In Count I, the Complaint asserts Hughes was "wrongfully denied benefits due under the Plan." (Doc. No. 1 ¶ 23.) A claim for benefits "stands or falls by 'the terms of the plan." *Kennedy*, 555 U.S. at 300 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). Section 1132(a)(1)(B) of ERISA authorizes a participant or beneficiary "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). If a participant or beneficiary is denied benefits under an employee benefit plan, he may challenge the denial in federal court. *See David B. v. Blue Cross Blue Shield of N. Carolina*, No. 1:24-cv-896, 2025 WL 2784309, at *3 (M.D.N.C. Sept. 30, 2025) (quoting *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 108 (2008).

In his opposition, Hughes argues that Defendants "presented and administered an employee-benefits enrollment system in a manner that led him to elect and pay for family AD&D coverage believing that his spouse was insured for the elected amount of ten (10 X) his annual salary." (Doc. No. 44 at 2.) For example, he claims that the "material 50% limitation of such amount was omitted from the benefits portal or concealed behind an [sic] sequence of inconspicuous hyperlinks." *Id.* Hughes contends that this violates ERISA because the limitation terms were "not conspicuous as required by 29 C.F.R. §§ 2520.102-2 and 2520.102-3." *Id.* at 4.

The parties do not dispute that Hughes enrolled in AD&D, that he selected the maximum coverage allowed and this Principal Sum was equal to $830,000, or that Hughes was married with dependent children and the deceased is his wife. The dispute is simply whether Hughes is entitled to 100% of the Principal Sum, as he claims, or 50%, as Defendants contend.

---

Plaintiff references this appeal stating, "Plaintiff timely appealed the decision." (Doc. No. 1 ¶ 19.) But this brief cameo does not make the reference "integral" to the Complaint.

The SPD and Plan documents conclusively resolve this question in favor of Defendants. The SPD provides a chart titled "Principal Sum for each of Your Eligible Dependents," which summarizes the relevant provision of the AD&D:

**<u>Accidental Death and Dismemberment Benefit (AD&D)</u>**

**<u>Supplemental AD&D Principal Sum</u>**

**Principal Sum**

The Principal Sum applicable to You is the amount for which:
a) You are eligible to request as determined below;
b) You have given us a Written Request; and
c) the required premium is paid.

**Principal Sum Amount:** 1, 2, 3, 4, 5, 6, 7, 8, 9, or 10 times Earnings, subject to a Maximum Amount of $1,000,000

**<u>Principal Sum for each of Your Eligible Dependents</u>**

The Principal Sum that applies to each person covered under The Policy as Your Dependent, on the date of accident, is determined by multiplying Your Principal Sum by the percentage determined below.

| | **Spouse** | **Each Dependent Child** |
|---|---|---|
| Spouse only | 60% | 0% |
| Spouse and Dependent Child(ren) | 50% | 15% |
| Dependent Child(ren) only | 0% | 20% |

Principal Sum for any one Child cannot exceed the lesser of the amount calculated above or $50,000.

(Doc. No. 39-1; Doc. No. 39 at 4.) The plain and ordinary reading of this table indicates that when an employee has a spouse and children, the spouse is covered at 50%, and each dependent child is covered at 15% of the Principal Sum. Because a claim for benefits "stands or falls" by the terms of the plan, and the terms of this Plan unambiguously limit Hughes's benefits for his spouse's untimely passing, the Complaint fails to state a claim for ERISA benefits, and the Court will dismiss Count I.

### D. ERISA – Count II

The Complaint packs several claims and requests into Count II: (1) breach of duty of loyalty/prudence; (2) failed disclosures under ERISA and 29 C.F.R. § 2520.102-2 and § 2520.102.3; and (3) a request for equitable relief, including the reform of plan communications. Like Count I above, each of these claims, which are parsed separately below, almost exclusively

takes aim at purportedly misleading information on the Plan's portal, not the Plan itself or even the SPD.

### 1. Breach of Fiduciary Duty

#### a. Fiduciary Status

With respect to the claim of a breach of the duty of loyalty/prudence, the Court must first answer "the threshold question . . . whether [each defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226. For the reasons stated below, the answer to this threshold question, as applied to each Defendant, is no.

Fiduciary status may arise under ERISA in one of two ways. First, an individual or entity may be a "named fiduciary" in the plan documents. 29 U.S.C. § 1102(a)(2). Second, a "person" may become a "functional" fiduciary where the person exercises control over the relevant functions in relation to the plan. *See id.* § 1002(21)(A). With respect to whether a party is a "functional" fiduciary, ERISA provides:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "[A]n ERISA fiduciary is 'any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan.'" *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 229 (4th Cir. 2014) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)). In contrast, one "who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75-8, D-2. Also, "being a fiduciary under

ERISA is not an all-or-nothing situation. Rather, the inquiry must be examined 'with respect to the particular activity at issue.'" *Gordon v. CIGNA Corp*., 890 F.3d 463, 474 (4th Cir. 2018) (citation omitted).

To determine whether a person was acting as a fiduciary during the alleged misconduct, the Supreme Court instructs courts to consider "(1) whether the acts in question were like traditional fiduciary decisions, which are typically 'decisions about managing assets and distributing property to beneficiaries,' and (2) whether treating these acts as fiduciary decisions under ERISA would lead to the undesirable federalization of large swaths of state law." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 193 (4th Cir. 2002) (quoting *Pegram*, 530 U.S. at 226, 231, 235-36) (internal citation omitted). Where an entity or person has both fiduciary and non-fiduciary duties, ERISA does not require—indeed does not allow—such a person to wear "two hats" simultaneously. *See Reetz v. Aon Hewitt Investment Consulting, Inc.*, 74 F.4th 171, 180 (4th Cir. 2023) (quoting *Pegram*, 530 U.S. at 225). That is, even if a person is a fiduciary at certain times or while performing specific functions, to state a claim of breach of fiduciary duty, the person must be wearing the "fiduciary hat" when taking the action subject to complaint." *Id.*

In his opposition, Hughes argues that Truist meets this "functional and activity-specific" inquiry because it served as plan sponsor and administrator and exercised responsibility over "Plan communications" among other things. (Doc. No. 44 at 12.) Hughes contends that Truist knew its benefits portal was deficient because one of its managers acknowledged that it was difficult to locate and potentially misleading. *See id.*

Hartford's primary argument on this issue is that Hughes has impermissibly "repackaged" his benefits-related claim as one for breach of fiduciary duty, citing Fourth Circuit precedent that admonishes courts to dismiss claims for breach of fiduciary duty that "simply repackaged a

§ 502(a)(1)(B) claim for wrongful denial of benefits and placed a § 502(a)(3) bow on top." (Doc. No. 42 at 15) (quoting *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)). Truist argues (1) the Complaint fails to allege Truist is a fiduciary;[9] (2) the Complaint does not allege facts supporting loss to the Plan; (3) the equitable relief sought under § 1132(a)(3) is barred by binding Fourth Circuit precedent; and (4) there is no individual enforcement mechanism under § 1104. (Doc. No. 39 at 10.)

Here, even if each Defendant had fiduciary responsibilities at times, Defendants were not wearing their fiduciary hats during the conduct at issue in the Complaint—communicating Plan information on its Portal. The Complaint asserts that the portal led Hughes to believe that the coverage of his wife's death was for the full Principal Sum and any limitation was buried in non-conspicuous hyperlinks. But the portal layout is a ministerial task, not a fiduciary one. While there is some discretion in how a portal layout is arranged for information and hyperlinks, it is only a design choice, not an exercise of fiduciary discretion. Indeed, if internet portal design were to become fodder for claims of breach of fiduciary duty, it would risk expanding fiduciary duties well beyond the text of ERISA and its common law roots in trusts. *See Varity Corp.*, 516 U.S. at 496 (citing G. Bogert & G. Bogert, Law of Trusts and Trustees § 255, p. 343 (rev. 2d ed. 1992)). Therefore, the Court finds that neither Truist nor Hartford acted as a fiduciary with respect to designing the Plan's information portal.

**b. Breach**

Even if Defendants were considered a fiduciary during the challenged conduct, Truist argues the Complaint does not allege facts sufficient to show breach or loss, (Doc. No. 39 at 2), and Hartford argues the only allegations of breach are directed at the plan administrator, not the

---

[9] *See supra*, n.3.

insurer. (Doc. No. 16-1 at 13-14.) In response, Hughes contends that Defendants breached their fiduciary obligations through "materially misleading or inadequate communications" about the Plan. (Doc. No. 44 at 23.) The Court agrees with Defendants.

While the Court accepts and understands that Hughes arrived at the wrong conclusion about his benefits, that is very different than concluding that he was misled to believe it. Nor is the mere allegation that Hughes's misunderstanding was "deliberately" caused by Defendants, by itself, enough to sustain a claim for breach of fiduciary duty. "ERISA does not impose a general duty requiring ERISA fiduciaries to ascertain on an individual basis whether each beneficiary understands the collateral consequences of his or her particular election." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001) (quoting *Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445, 452 (6th Cir.1993) (explaining that "a fiduciary is not obligated to seek out employees to ensure that they understand the plan's provisions"). Thus, there are insufficient factual allegations in the Complaint to support a plausible inference of a breach of fiduciary duty.

**2. Disclosures**

The second claim in Count II alleges that Defendants failed to provide proper disclosures under ERISA and 29 C.F.R. § 2520.102-2 and § 2520.102.3 The title of 29 C.F.R. § 2520.102-2 is "Style and Format of Summary Plan Description."[10] Its two subsections concern the method of presentation and general format of a SPD. Under the regulation, an SPD "shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." 29 C.F.R. § 2520.102-2(a). The format requirements of the SPD focus on accuracy

[10] 29 C.F.R. § 2520.102-3 has a similarly straightforward yet informative title, "Contents of Summary Plan Description."

and readability (e.g., a plan's limitations cannot appear less prominently than the plan's benefits). *See* 29 C.F.R. § 2520.102-2(b). And the regulation requires that the SPD accurately reflect the content of the plan and enumerates, "(j) through (n)," specific requirements (e.g., name, address, type of plan). 29 C.F.R. § 2520.102-3. Notably, none of these regulations require a plan fiduciary to maintain a participant portal, much less sets requirements for how the portal is designed.

Hughes overstates the importance of two purported facts: that a Truist employee admitted that the website could be misleading and that Truist in fact updated the website after his complaint. First, the only mention of websites in 29 C.F.R. § 2520.102-3 states that subsections (m)(2)-(3) are satisfied, among other things, with a link to a general webpage, "http://www.pbgc.gov," rather than to a page with specific plan information. Further, in *Griggs*, where the Fourth Circuit held an ERISA plan administrator breached his fiduciary duty by failing to inform a beneficiary that his plan to rollover his retirement account tax free was doomed by the tax code, the court emphasized that "it is critical that [the employee's] misunderstanding was fostered" by the company's explanation. 237 F.3d at 382. That is, the breach hinged on a company representative failing to provide accurate information to a beneficiary in response to a proposed course of action. In contrast, here Hughes selected the maximum amount of coverage under the Plan and the issue of his alleged misunderstanding of the clear terms of the Plan with respect to the scope of spousal coverage did not occur until later (and thus the misunderstanding was not motivated by his conversation with the Truist employee).

Second, it is a well-established principle that subsequent remedial measures do not establish wrongdoing. *See generally* Fed. R. Evid. 407, Advisory Note (citing *Chase v. General Motors Corp.*, 856 F.2d 17, 21-22 (4th Cir. 1988); *see also* § 5283 Scope "Remedial Measures," 23 Fed. Prac. & Proc. Evid. § 5283 (2d ed.).

### 3. Equitable Relief

The final "claim" in Count II relates to a request for "equitable relief" under 29 U.S.C. § 1132(a)(3), specifically that the Plan communications be reformed. (Doc. No. 1 ¶ 27.) Section 1132(a)(3) permits a participant, beneficiary, or fiduciary of its plan to bring a claim "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this [Protection of Employee Benefit Rights] subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). However, "[i]ndividualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102 (4th Cir. 2006) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 490 (1996)). The Supreme Court has explained that where § 1132's overall structure enumerates six categories with specific focus areas, a subsection like § 1132(a)(3) acts as a "catchall" or "safety net" provision to provide relief for injuries not covered by the other sections. *See Varity Corp.*, 516 U.S. at 512 (affirming judgment in favor of employee under §1132(a)(3) where employee could not proceed under the first or second subsection so he must be able to proceed under the third subsection or "have no remedy at all").

Truist argues that the relief sought—an order from the Court requiring Defendants to "reform the Plan communications"—is not allowed. (Doc. No. 49 at 5.) (citing *David B. v. Blue Cross Blue Shield of N.C.*, No. 1:24-cv-896, 2025 WL 2784309 at *10 (M.D.N.C. Sept. 30, 2025)). To the extent reformation is authorized, Truist contends that reformation must be directed at the "<u>terms</u> of the Plan." *Id.* (quoting *David B.*, 2025 WL 2784309 at *10) (emphasis in court's opinion). Hartford argues that the Supreme Court has held that "the district court *erred* for providing the *exact* remedy Hughes seeks here: reforming plan terms." *Id.* at 6 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)). Hughes responds that recent Supreme Court and Fourth

Circuit opinions held § 503(a)(3) "authorizes traditional equitable remedies, including reformation and equitable estoppel." (Doc. No. 44 at 16-17) (citing *CIGNA Corp.*, 563 U.S. at 438-42 and *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 496 n.4 (4th Cir. 2023).

Again, the Court agrees with Defendants. ERISA's "comprehensive and reticulated scheme warrants a cautious approach to inferring remedies not expressly authorized by the text." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). The equitable provision in § 1132(a)(3) addresses injuries that do not find adequate redress in other provisions; it does not address claims that do not find success under other sections. *See Korotynska*, 474 F.3d at 102. Hughes's reliance on *Varity* is misplaced because there, the Supreme Court found the participant *could not* bring a claim under § 1132(a), so without § 1132(a)(3) he would have "no remedy at all." *See Varity Corp.*, 516 U.S. at 512. This is very different than failing to state a claim under one section of the Act and using a latter section as an end around the failure to state a claim. Doing so would improperly convert a statutory "safety net" for valid claims that fall outside the statutory language into a "first line of attack" by tacking on a claim for equitable relief where the remedy at law is—if proven—available in the plain language of § 1132(a)(1)(B) and structure of § 1132. *Korotynska*, 474 F.3d at 108.

**E. State Law Claim**

Lastly, in Count III, the Complaint alleges misrepresentation and concealment. (Doc. No. 1 at 8.) Because these claims are preempted by ERISA, the Court will dismiss Count III.

"ERISA contains an express preemption provision, which states, "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Allen v. MetLife*, No. 5:21-cv-174-D, 2022 WL

97178, at *3 (E.D.N.C. Jan. 10, 2022) (quoting 29 U.S.C. § 1144(a)). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983) (citing Black's Law Dictionary).[11] "ERISA's preemption provision is 'deliberately expansive and designed to establish [benefit] plan regulation as exclusively a federal concern.'" *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987). Although the Supreme Court has generally been "reluctant" to find complete preemption in Federal law, it has found complete preemption in three statutes, including ERISA. *See Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

ERISA preemption also broadly applies to state statutes and common law doctrines alike. *See Stevens v. E.I. Dupont De Nemours and Co.*, 145 F. Supp. 3d 541, 546 (E.D.N.C. 2015) (citing *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs. Inc.*, 791 F.3d 436, 447 (4th Cir. 2015). Courts across the country, including the Fourth Circuit, have generally held ERISA preempts state common law claims of fraudulent or negligent misrepresentation, particularly when "the false representations concern the existence or extent of benefits under an employee benefit plan." *Griggs*, 237 F.3d at 378 (holding ERISA preempted claim that plan administrator knew the federal tax code barred the lump sum rollover of retirement money that plaintiff sought but failed to notify him before he retired) (collecting cases); *see also Ford v. Hartford Life & Acc. Ins. Co.,* No. 3:08-cv-281, 2009 WL 963594, at *5 (W.D.N.C. Apr. 8, 2009)

---

[11] *See* Black's Law Dictionary 1158 (5th ed. 1979) ("Relate. To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"); Black's Law Dictionary 544 (12th ed. 2024) (Relate. To have some connection to; to stand in relation to."). Perhaps not coincidentally, the 12th edition includes ERISA as an example of "relates to": "A state law relates to an ERISA plan if it has connection with or reference to such a plan." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001).

("State law claims sounding in tort but which are based on the allegedly wrongful denial or termination of benefits under an ERISA plan are preempted.").

Alternatively, a state-law claim may be preempted by ERISA under "conflict preemption," which exists when "it conflicts directly with an ERISA cause of action." *Griggs*, 237 F.3d at 378 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 at 142); *see Powell v. Chesapeake & Potomac Tel. Co. of Va.,* 780 F.2d 419, 422 (4th Cir. 1985) ("To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law."). "[I]n light of the objectives of ERISA and its preemption clause, Congress intended ERISA to preempt at least three categories of state laws that can be said to have a connection with an ERISA plan." *Allen*, 2022 WL 97178, at *3-4 (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996). These three categories are: (1) "state laws that mandate employee benefit structures or their administration"; (2) "state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice"; and (3) state laws that "provid[e] alternate enforcement mechanisms for employees to obtain ERISA plan benefits." *Id.* "A state-law claim is an alternate enforcement mechanism for obtaining ERISA plan benefits, enforcing fiduciary duties, or forcing disclosure of information when it rests on the same allegations that support an ERISA claim and an employee brings it against a defendant owing a plan-created fiduciary duty to the employee." *Id.* (citing *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341-44) (4th Cir. 2007); *see also Clark*, 229 F. Supp. 2d at 485 (finding common law fraud to be "an impermissible attempt to use state law to 'define fiduciary duties or address faulty plan administration' and would thus constitute an alternative enforcement mechanism to a breach of fiduciary duty claim under § 502") (citation omitted).

In seeking to preserve his state law claims in the face of this authority, Hughes contends that the Fourth Circuit makes a distinction that saves his claims. Relying on *Darcangelo*, 292 F.3d at 191-95 and *Coyne & Delany Co.*, 98 F.3d at 1469-71, Hughes argues that if the alleged misconduct falls under fiduciary conduct, then his tort claim is preempted and analyzed under ERISA, but if the challenged misconduct does not fall under fiduciary conduct, then his tort claim is not preempted. (Doc No. 44 at 20.) But *Darcangelo* and *Pegram* are distinguishable. In *Darcangelo*, the Fourth Circuit repeatedly states that the complaint in that case did not allege the fiduciary improperly performed traditional fiduciary functions; the complaint did the opposite. That is, the court explained that the complaint alleged "improper conduct so unrelated to the plan that it cannot be termed 'plan administration' of any sort." *Id.* (describing the behavior as a "rogue administrator, acting entirely outside the scope of its duties under the plan). Such is not the case here.[12]

The Complaint asserts Defendants' misconduct was undertaken pursuant to their purported fiduciary duties. It does not suggest that either Defendant was acting as "rogue administrator" as in *Darcangelo*. Indeed, the Complaint references the Plan, its coverage, or Plaintiff's decision regarding Plan coverage in nearly every paragraph concerning the tort claim. (*See* Doc. No. 1 at 8.) The Complaint's "misrepresentation and concealment" section also repeatedly references the Plan, the Plan's portal, coverage, and Plan administrators or managers. *Id.* at 6. Plaintiff's tort claims are therefore an impermissible attempt to reinforce ERISA benefits through alternative means.

[12] *Coyne* does not help Hughes either. There, the Fourth Circuit held that the professional malpractice claim was not even directed at a plan administrator or asserted by a plan beneficiary, nor does it create reporting or disclosure requirements, and it was not aimed at receiving ERISA benefits; it sought damages proximately caused by purportedly negligent insurance professionals in their personal capacity. *See Coyne & Delany Co.*, 98 F.3d at 1471.

Moreover, because the crux of the Complaint is whether Hughes is entitled to the full Principal Sum, the claim cannot be resolved without reference to the Plan, meaning Hughes has standing to pursue his claim under § 502, and thus his claims are not capable of resolution without interpreting the Plan. So, the state law claims are preempted by ERISA. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1481 (4th Cir. 1996); *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants Hartford and HIG's Motion to Dismiss (Doc. No. 16) is **GRANTED;**
2. Defendant Truist's Motion to Dismiss (Doc. No. 38) is **GRANTED;**
3. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED**; and
4. The Clerk is directed to close this matter in accordance with this Order;

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 21, 2026

Kenneth D. Bell
United States District Judge